# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RICHARD MITCHELL and DEBORAH TRUBELA, h/w,<br><br>    Plaintiffs,<br><br>    v.<br><br>SEBASTIEN THERIAULT and RIP-O-BEC, INC., et al.,<br><br>    Defendants. | NO. 3:07-CV-1241<br><br>(JUDGE CAPUTO) |

## **MEMORANDUM**

Before me is the Motion to Vacate Service of Process pursuant to Federal Rule of Civil Procedure 12(b)(5) (Doc. 3). The Defendants in this removal case, Sebastian Theriault and Rip-O-Bec, Inc., seek to have the service that was made on them by registered mail on November 7, 2006 quashed because it violates the Hague Convention. Because Plaintiffs' method of service on Defendant Rip-O-Bec, Inc., was not proper but its service on Defendant Theriault was proper, Defendants' motion will be granted in part and denied in part.

## BACKGROUND

Plaintiffs Richard Mitchell and Deborah Trubela, husband and wife, filed their Complaint (Doc. 3-3) in the Luzerne County Court of Common Pleas. The Complaint alleged that the Defendants, Sebastien Theriault, who resides in Quebec, Canada, and Rip-O-Bec, Inc., which has its principal place of business in Quebec, Canada, negligently injured Plaintiffs in an automobile accident. (Compl., Doc. 3-3.) Plaintiffs sent a copy of

their Complaint to each Defendant by registered mail on November 7, 2006, and Plaintiffs received signed service cards for each Defendant. (Pls.' Mem. in Opp'n, Doc. 6, at 1.) On July 10, 2007, the case was removed to this Court. (*See* Doc. 1). Defendants now move to quash service of process pursuant to Federal Rule of Civil Procedure 12(b)(5). (Doc. 3.) This motion is fully briefed and ripe for disposition.

## LEGAL STANDARD

Rule 12(b)(5) of the Federal Rules of Civil Procedure permits a motion to dismiss for "insufficiency of service of process." Fed. R. Civ. P. 12(b)(5). In such a motion, "the party asserting the validity of service bears the burden of proof on that issue." *Grand Entm't Group, Ltd. v. Star Media Sales, Inc.*, 988 F.2d 476, 488 (3d Cir. 1993).

## DISCUSSION

**I. Does the Hague Convention Prohibit Service by Mail?**

Service upon individuals in a foreign country and corporations not found within the United States must be made by "any internationally agreed means of service that is reasonably calculated to give notice, such as those means authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents." Fed. R. Civ. P. 4(f)(1) and 4(h)(2). Service of process abroad is controlled by the Hague Convention, to the extent that the convention applies. *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 705 (1988) ("[C]ompliance with the Convention is mandatory in all cases to which it applies."). Both parties agree that Canada is a signatory to the Hague

2

Convention and has been since 1989. That Convention provides that each party to the Convention shall designate a Central Authority to receive requests for service coming from other contracting States. Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters [hereinafter Hague Convention] art. 2, *Entered into Force for the United States*, Feb. 10, 1969, 20 U.S.T. 361, 658 U.N.T.S. 163. The Convention provides that the documents shall be forwarded to the Central Authority of the State receiving the process, which will then serve the document itself or arrange to have it served by an appropriate agency, either:

> (a) by a method prescribed by its internal law for the service of documents in domestic actions upon persons who are within its territory, or
>
> (b) by a particular method requested by the applicant, unless such a method is incompatible with the law of the State addressed.

*Id.* arts. 3, 5.

Defendants argue that because Plaintiffs' method of service, sending the Complaint directly by registered mail, fails to comply with this framework, service was improper and should be set aside. (Mem. in Supp. of Defs.' Mot. to Vacate, Doc. 4, at 3.) But Plaintiffs, who bear the burden of establishing that service was proper, point to Article 10(a) of the Convention, which states:

> Provided the State of designation does not object, the present Convention shall not interfere with –
>
> (a) the freedom to send judicial documents, by postal channels, directly to persons abroad.

Hague Convention, art. 10(a). As Canada has not formally objected to Article 10(a), Plaintiffs maintain that service by direct registered mail was proper. They cite Pennsylvania state cases in support of this proposition, but "a state court's interpretation

3

of a federal treaty is not binding on a federal court, even if the federal court's jurisdiction is based on diversity." *Gallagher v. Mazda Motor of Am., Inc.*, 781 F. Supp. 1079, 1082 n.5 (E.D. Pa. 1992).

In the federal courts, the Third Circuit Court of Appeals has not addressed the interpretation of Article 10(a), and the other courts of appeals are split. The Fifth and Eighth Circuit Courts of Appeals have held that service of process by mail is not permitted under the Hague Convention and the Second and Ninth Circuit Courts of Appeals have held that it is.

### A. Guidance from the Fifth and Eighth Circuits

The Fifth and Eighth Circuits have held that "sending a copy of a summons and complaint by registered mail to a defendant in a foreign country is not a method of service of process permitted by the Hague Convention." *Bankston v. Toyota Motor Corp.*, 889 F.2d 172, 174 (8th Cir. 1989); *see Nuovo Pignone, SpA v. Storman Asia M/V*, 310 F.3d 374, 384-85 (5th Cir. 2002). These courts reasoned that because the word "service" is used not only in Articles two (2) through six (6) of the Convention, but also in subsections (b) and (c) of Article ten (10), which discuss service of judicial documents through judicial officers and officials, the use of the a different phrase, "send judicial documents," in Article 10(a) must be deliberate. *See Bankston*, 889 F.2d at 173-74 ("where a legislative body 'includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that [the legislative body] acts intentionally and purposely in the disparate inclusion or exclusion.'" (citing *Russello v.*

*United States*, 464 U.S. 16, 23 (1980)).  They conclude "that Article 10(a) merely provides a method for sending subsequent documents after service of process has been obtained by means of the central authority."  *Bankston*, 889 F.2d at 174; *see also Nuobo Pignone*, 310 F.3d at 384.  As further support for their conclusion, these courts also note that Japan, whose internal law does not permit service by mail, objected specifically to Articles 10(b) and (c), which provide for "much more formal modes of service," and reason that it was "extremely unlikely that Japan's failure to object to Article 10(a) was intended to authorize the use of registered mail as an effective mode of service of process."  *Bankston*, 889 F.2d at 174.  That failure to object suggests instead, these courts conclude, that Article 10(a) was not understood by its drafters to allow service by mail.  And, the District Court for the Eastern District of Pennsylvania reasoned in a 1991 case, "the Convention laboriously developed a complex system for service of process, yet if service of process could be accomplished simply by sending something through the mail, the vast bulk of the convention would be useless."  *Raffa v. Nissan Motor Co. Ltd.* 141 F.R.D. 45, 46-47 (E.D. Pa. 1991) (internal quotation marks omitted).

### B. Guidance from the Second and Ninth Circuits

On the other hand, the Second and Ninth Circuit Courts of Appeals have held that Article 10(a) would be superfluous unless it is read to permit service of process by direct mail and that "it is consistent with the purpose of the Convention [which is] to facilitate international service of judicial documents."  *See Brockmeyer v. May*, 383 F.3d 789, 802 (9th Cir. 2004) (concluding that "the meaning of 'send' in Article 10(a) includes 'serve'");

*Ackermann v. Levine*, 788 F.2d 830, 839 (2d Cir. 1986) (same). These courts concluded that the use of the word "send" in Article 10(a), as opposed to "service" and "served" in Articles two (2) through six (6) "must be attributed to careless drafting." *See Ackermann*, 788 F.2d at 839 (quoting 1 Bruno A. Ristau, INTERNATIONAL JUDICIAL ASSISTANCE (CIVIL AND COMMERCIAL) § 4-28, at 165-67 (1984), a commentary on the history of the negotiations leading to the Convention, which reached the conclusion about careless drafting after "reviewing the *Rapporteur's* report on the final text of the Convention").

Similarly, the Ninth Circuit Court of Appeals stated that, "[a]ccording to the official Rapporteur's report, the first paragraph of Article 10 of the draft Convention, which 'except for minor editorial changes,' is identical to Article 10 of the final Convention, was intended to permit service by mail." *Brockmeyer*, 383 U.S. at 802-03 (citing 1 Bruno A. Ristau, INTERNATIONAL JUDICIAL ASSISTANCE § 4-3-5, at 204-05 (2000) [hereinafter Ristau (2000)]). The *Brockmeyer* court also noted that a handbook published by the Permanent Bureau of the Hague Convention stated that it would "contradict what seems to have been the implicit understanding of the delegates at the 1977 Special Commission meeting, and indeed ... the legal literature on the Convention and its predecessor treaties" to conclude that service by mail is not permitted. *See id.* at 803.

The Ninth Circuit Court of Appeals in *Brockmeyer* also cited "the essentially unanimous view of other member countries of the Hague Convention" that Article 10(a) allows service by mail. *Brockmeyer*, 383 F.3d at 802 (citing Case C- 412/97, *E.D. Srl. v. Italo Fenocchio*, 1999 E.C.R. I3845, [2000] C.M.L.R. 855 (Court of Justice of the European Communities) ("Article 10(a) of [the Hague Convention] allows service by

6

post."); *Integral Energy & Envtl. Eng'g Ltd. v. Schenker of Canada Ltd.*, (2001) 295 A.R. 233, 2001 WL 454163 (Alberta Queens Bench) ("Article 10(a) of the Hague Convention provides that if the state of destination does not object, judicial documents may be served by postal channels"), *rev'd on other grounds,* (2002) 293 A.R. 327; *R. v. Re Recognition of an Italian Judgment,* [2002] I.L.Pr. 15, 2000 WL 33541696 (Thessaloniki Court of Appeal, Greece) ("It should be noted that the possibility of serving judicial documents in civil and commercial cases through postal channels .. is envisaged in Article 10(a) of the Hague Convention.")).

 Finally, the *Brockmeyer* court relied on interpretations of Article 10(a) by the United States government, citing the United States delegate to the Hague Convention's report to Congress in 1967 that Article 10(a) permitted service by mail as well as State Department Circulars as recent as 2003 reaching the same conclusion.  *See id.*  The court also cited a 1991 letter from the State Department that expressed its disagreement with the Eighth Circuit Court of Appeals' holding in *Bankston*.  *See id.* (citing Letter from Alan J. Kreczko, U.S. Dep't of State Deputy Legal Adviser, to the Admin. Office of the U.S. Courts (March 14, 1991)*, quoted in* U.S. Dep't of State Op., Regarding the *Bankston* Case, 30 I.L.M. 260 (1991)).   That letter stated that "while courts in the United States have final authority to interpret international treaties for the purposes of their application as law of the United States, they give great weight to treaty interpretations made by the Executive Branch." *Id.* (quoting Letter from Alan J. Kreczko, *supra*).

7

### C. Guidance from Within the Third Circuit

District courts within this Circuit have, like the courts of appeals, gone both ways on the interpretation of Article 10(a).  In its 1991 *Raffa* case, the U.S. District Court for the Eastern District of Pennsylvania held that service by mail was not permitted, based on the same reasoning the Fifth and Eighth Circuits employed. *See Raffa*, 141 F.R.D. at 46-47.  But in 2001, a case from the same district reached the opposite conclusion, holding, albeit with only minimal discussion, that "service by mail is not barred under the Hague Convention [and] ... is precluded only where the signatories to the Hague Convention have objected to mail service under Article 10." *McCarron v. British Telecom*, No. 00-CV-6123, 2001 WL 632927, at *2 (E.D. Pa. June. 6, 2001).

### D. Conclusion

In light of the more recent decision from a district court in this Circuit that service by mail is not prohibited under the Hague Convention, and the reasoning of the Ninth Circuit Court of Appeals, including the evidence that international opinion views Article 10(a) as permitting service of process by mail, which undercuts the inferences that the Eighth Circuit drew from Japan's failure to object to Article 10(a), the Court is persuaded to join the Second and Ninth Circuits in holding that service of process is not prohibited by the Hague Convention.

## II.  Was Service on Defendants Proper?

The inquiry does not end with the conclusion that the Hague Convention does not

prohibit service by mail. As the Ninth Circuit Court of Appeals pointed out, "[a]rticle 10(a) does not itself affirmatively authorize international mail service. It merely provides that the Convention 'shall not interfere with' the 'freedom' to use postal channels if the 'State of destination' does not object to their use." *Brockmeyer*, 383 F.3d at 803-04. In order for service by mail to be effective, two requirements must be met. First, the receiving country must not have objected to Article 10(a). Here, Defendants do not claim that Canada has objected to service of process by mail, and even acknowledge that service by certified mail is effective in many provinces of Canada. (*See* Defs.' Reply Mem., Doc. 7, at 2-3.)

Second, "[e]ven though a contracting state may not object ... it is still necessary that the law of the state where the action is pending authorize the particular method of service employed." *Brockmeyer*, 383 F.3d at 804 (citing 1 Ristau (2000) § 4-3-5, at 205). With regard to this question, the Ninth Circuit Court of Appeals stated that:

> we must look outside the Hague Convention for affirmative authorization of the international mail service .... Any affirmative authorization of service by international mail, and any requirements as to how that service is to be accomplished, must come from the law of the forum in which the suit is filed.

*Id.* at 804. In other words, here, the affirmative authorization must come from the law of the United States.

The only explicit, affirmative authorization for service by international mail in U.S. law is found in Federal Rule of Civil Procedure 4(f)(2)(C)(ii), which "authorizes service abroad by mail for which a signed receipt is required, when such mail is addressed and

9

mailed by the clerk of the federal district court in which the suit is filed."[1] *Brockmeyer*, 383 F.3d at 804.  Here, Plaintiffs sent their Complaint to Defendants by registered mail, but it was Plaintiffs' counsel, not the clerk of the district court in which the suit was filed, who sent the Complaint.  Affirmative authorization for Plaintiffs' method of service, therefore, cannot be found in Rule 4(2)(C)(ii).  There is likewise no affirmative authorization in Rule 4(f)(3), which allows "other means not prohibited by international agreement as may be directed by the court," because Plaintiffs did not obtain a court approval of their method of service.

The last potential source of authorization for Plaintiffs' method of service is Federal Rule of Civil Procedure 4(f)(2)(A), which authorizes service, if the international agreement allows other means of service, "in the manner prescribed by the law of the foreign country for service in that country in an action in any of its courts of general jurisdiction."  To begin, the Ninth Circuit Court of Appeals read this provision as not authorizing service by international mail, in part because "the common understanding of Rule 4(f)(2)(A) is that it is limited to personal service," and because of "the explicit

---

[1]
Federal Rule of Civil Procedure 4(f)(2)(C)(ii) provides that:
(f) [S]ervice ... may be effected in a place not within any judicial district of the United States:
\*\*\*
(2) if ... the applicable international agreement allows other means of service, provided that service is reasonably calculated to give notice:
\*\*\*
(C) unless prohibited by the law of the country, by
\*\*\*
(ii) using any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the party to be served.
Fed. R. Civ. P. 4(f)(2)(C)(ii).

10

mention of international registered mail in Rule 4(f)(2)(C)(ii) ... and the absence of any such mention in Rule 4(f)(2)(A)." But the Ninth Circuit Court of Appeals in that case, and the Eleventh Circuit Court of Appeals in another case, *Prewitt Enters. v. OPEC*, 353 F.3d 916, 925 (11th Cir. 2003), did not resolve the question without looking to the law of the receiving country, so this Court will look to the law of Canada.

Defendants urge that "Canada defers to the individual provinces and their requirements for service of judicial documents in civil or commercial matters" and that although "service of process by way of certified mail can be made in other provinces of Canada," it is not effective in Quebec. (Defs.' Reply Mem., Doc. 7, at 2-3.) To support this proposition, Defendants cite a publication of the American Bar Association that states that "[s]ervice must be effected according to methods prescribed by each province. Normally personal service by a sheriff or hussier in Quebec." AM. BAR. ASSOC. TORT, TRIAL, & INS. PRACTICE SECTION, INTERNATIONAL LITIGATION: DEFENDING AND SUING FOREIGN PARTIES IN U.S. FEDERAL COURTS 62 (David J. Levy, ed., 2003). The same publication states that service by mail, under Article 10(a) of the Convention, is available "in some areas." *Id.* It does not specifically say that service by mail is prohibited in Quebec, though.

Canadian law provides that originating documents in litigation "shall be served personally in a manner set out in rules 128 to 133." Service of Documents SOR/1998-106 § 127 (Can). In accordance with those rules, personal service on an individual may be made "by mailing the document by registered mail to the individual's last known address, if the individual signs a post office receipt." *Id.* § 128. Canada's regulations

11

relating to service of process do not appear to defer to the law of the provinces with regard to service of individuals. So, although the only mention of service by registered mail in Quebec's Code of Civil Procedure applies "[i]n any place where, within a radius of 50 kilometres, there is neither sheriff nor bailiff able to act," R.S.Q., C-25 § 122, it is Canada's law that is relevant to the application of Federal Rule of Civil Procedure 4(f)(2)(A) (allowing service "in the manner prescribed by the law of the foreign *country* for service in that country in an action in *any of its courts of general jurisdiction*"). Because Canada's law allows service by registered mail on individuals in "any of its courts of general jurisdiction," there does exist an affirmative authorization in U.S. law for the method of service Plaintiffs employed to serve Defendant Theriault.

On the other hand, Canada's law provides that personal service on a corporation may be effected either by methods not employed here, such as leaving the document with an officer, director, legal counsel, or the person apparently in charge of the head office of the branch where service is effected, or "in the manner provided for service on a corporation in proceedings before a superior court in the province in which the service is being effected." *Id.* § 130(1). Unlike with service on individuals, Canada does defer to the provinces to set forth rules governing service on corporations. The law of Quebec thus becomes relevant. In Quebec, service "upon a legal person is made at its head office." Q.R.S. C-25, § 130. Service on a corporation by registered mail is not mentioned in Quebec's code, or in Canada's rules of civil procedure, so Plaintiffs' method of service on Defendant Rip-O-Bec, Inc., does not find affirmative authorization in U.S. Federal Rule of Civil Procedure 4(f)(2)(A). As discussed above, that authorization is not found in

any other provision of United States law either.  Plaintiffs' service of process on Defendant Rip-O-Bec, Inc., therefore, was ineffective.

**III. Plaintiffs Are Free To Effect Proper Service**

Although Defendants' motion was brought pursuant to Federal Rule of Civil Procedure 12(b)(5), district courts reviewing such motions "possess broad discretion to either dismiss the plaintiff's complaint for failure to effect service or to simply quash service of process.  However, dismissal of a complaint is inappropriate when there exists a reasonable prospect that service may yet be obtained.  In such instances, the district court should, at most, quash service, leaving the plaintiffs free to effect proper service." *Umbenhauer v. Woog*, 969 F.2d 25, 30 (3d Cir. 1992)*.*

Here, there exists a reasonable prospect that service may yet be obtained.  The present case, like *Umbenhauer*, concerns service in a foreign country.  As such, the one hundred and twenty (120) day time limit for serving process after filing a complaint from Federal Rule of Civil Procedure 4(m)[2] does not apply.  *See id.* at 31.  Therefore, like in *Umbenhauer*, Plaintiffs are not time-barred from serving process properly on Defendant Rip-O-Bec, Inc.  For this reason, there exists a reasonable prospect that service may yet be obtained, and this Court will exercise its discretion to order that service be quashed, leaving Plaintiffs free to effect proper service.

Although the time limit of Federal Rule of Civil Procedure 4(m) is expressly made not to apply to service in a foreign country pursuant to subdivisions (f) of (j)(1), the Court

---

[2] Formerly Rule 4(j).

13

will impose a limit of one hundred and twenty (120) days from the date of this order for Plaintiffs to effect proper service on Defendant Rip-O-Bec, Inc.  The fact that the limit of Rule 4(m) does not apply does not mean that the Court, which would be within its authority to simply dismiss the action against Defendant Rip-O-Bec, Inc., is precluded from setting a reasonable time limit of its own.  *Cf. Montalbano v. Easco Hand Tools, Inc.*, 766 F.2d 737, 740 (2d Cir. 1985) (holding that the exemption from the Rule 4(m) time limit for service in foreign countries did not apply where the plaintiff had not even attempted to make such service).

Here, a time limit is appropriate.  As the Third Circuit Court of Appeals noted in *Umbenhauer*, the Federal Rules' drafters "apparently incorporated this exemption into Rule [4(m)] because, as we have recognized, 'the vagaries of such service [on foreign defendants] render the Rule [4(m)] time limit too burdensome on a plaintiff.'"  969 F.2d at 31 (quoting *Green v. Humphrey Elevator & Truck Co.*, 816 F.2d 1987)).  In the instant case, however, the Hague Convention provides a clear and unburdensome procedure for properly serving process on Defendant Rip-O-Bec, Inc.  Plaintiffs need only file their request with the designated Central Authority in accordance with the Hague Convention.  The time limit is appropriate also in light of the fact that this Court is governed by the Civil Justice Reform Act, which exhorts it to reduce delay to "ensure just, speedy, and inexpensive resolutions of civil disputes."  *See* 28 U.S.C. § 471.  Here, where one of the Defendants has already been served, there is good reason to impose some limit on the time Plaintiffs have to effect proper service in order to ensure that the case proceeds in a timely manner.

**CONCLUSION**

Because Plaintiffs' method of service on Defendant Theriault was proper, Defendants' motion to quash service on Defendant Theriault will be denied, and Defendant Theriault is served.  Because Plaintiffs' method of service on Defendant Rip-O-Bec, Inc., was not proper, Defendants' motion to quash service on Defendant Rip-O-Bec, Inc., will be granted.  Instead of dismissing the action against Defendant Rip-O-Bec, Inc., the Court is simply quashing service, leaving Plaintiffs free to effect proper service on Defendant Rip-O-Bec, Inc., within one hundred and twenty (120) days from the date of this decision.

An appropriate order follows.

| | |
|---|---|
| October 12, 2007 | /s/ A. Richard Caputo |
| Date | A. Richard Caputo |
| | United States District Judge |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

RICHARD MITCHELL and
DEBORAH TRUBELA, h/w,

    Plaintiffs,

        v.

SEBASTIEN THERIAULT and
RIP-O-BEC, INC., et al.,

    Defendants.

NO. 3:07-CV-1241

(JUDGE CAPUTO)

## ORDER

**NOW**, this __12th__ day of October, 2007, **IT IS HEREBY ORDERED** that Defendants' motion to vacate service of process is **GRANTED** in part and **DENIED** in part, as follows:

(1) Defendants' motion to quash service on Defendant Theriault is hereby **DENIED**.

(2) Defendants' motion to quash service on Defendant Rip-O-Bec, Inc., is hereby **GRANTED**.

(3) Plaintiffs have one hundred and twenty (120) days from the date of this order in which to effect proper service of process on Defendant Rip-O-Bec, Inc.

                                      /s/ A. Richard Caputo
                                      A. Richard Caputo
                                      United States District Judge